**RESNICK LAW GROUP, PC**
5 Becker Farm Road, 4th Floor
Roseland, New Jersey 07068
(973) 781-1204
Gerald J. Resnick (GJR-5741)

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KARL CINA<br><br>**Plaintiff**,<br><br>vs.<br><br>PUERTO RICAN FAMILY INSTITUTE, INC. and HOPE FOR FAMILIES AND CHILDREN FOUNDATION, INC.<br><br>**Defendants**. | Civil Action No.: 12 CV 2276<br><br>**SECOND AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff, Karl Cina, residing at 27 Honeyflower Drive, Yardville, New Jersey 08620 by way of Complaint against the defendants, alleges and says as follows:

### JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4); the supplemental jurisdiction of this Court over state claims is invoked under 28 U.S.C. § 1367(a).

2. Venue is proper within this District because the unlawful practices complained of herein all occurred within the Southern District of New York.

3. The causes of actions alleged seek to redress acts of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and New York Human Rights Law, N.Y. Exec. Law. Art. 15 ("NYHRL"), under the pendent jurisdiction of this Court.

4. The actions alleged herein were committed by the defendants and their officials, agents, and employees.

5. Prior to filing this civil action, Plaintiff filed a written charge under oath asserting reverse discrimination due to race and national origin with the Equal Employment Opportunity Commission (hereinafter "EEOC") within 300 calendar days of his termination.

6. On December 20, 2011, the EEOC issued a Notice of Right to Sue, which was received by Plaintiff on or about December 23, 2011.

## PARTIES

7. At all relevant times, the plaintiff, Karl Cina (hereinafter "Plaintiff" or "Plaintiff"), was employed as Controller by defendant Puerto Rican Family Institute, Inc. and by defendant Hope for Families and Children Foundation, Inc., until his unlawful termination on January 4, 2011. He is Caucasian, is a natural-born American, and is not of Puerto Rican or Latino descent.

8. At all relevant times, defendant Puerto Rican Family Institute, Inc. (hereinafter "PRFI") is a corporation with offices at 145 West 15th Street, New York, NY 10011, which employed Plaintiff as Controller until his unlawful termination on January 4, 2011.

9. At all relevant times, defendant Hope for Families and Children Foundation, Inc. (hereinafter "HFCF") is a corporation with offices at 145 West 15th Street, New York, NY 10011, which employed Plaintiff as Controller until his unlawful termination on January 4, 2011. HFCF is the supporting organization and fund raising arm of PRFI. (PRFI and HFCF are hereinafter collectively referred to as "Defendants.")

**FACTUAL BACKGROUND**

10. At all relevant times, approximately 90% of PRFI's staff and approximately 75% of HFCF's staff were Latino, of which the majority is Puerto Rican.

11. At all relevant times, all of PRFI's Board members, and all but one of HFCF's Board members, were Latino, of which the majority is Puerto Rican.

12. On several occasions prior to Plaintiff's unlawful termination, employees of Latino descent, particularly those that were Puerto Rican, were treated more favorably than non-Latino, non-Puerto Rican employees.

13. For instance, Puerto Rican and other Latino employees were not terminated or disciplined for offenses such as theft, failing to oversee invoices, failing to cease payroll for separated employees, disclosing sensitive information, violating Medicaid and other federal and state regulations, violating company policies and procedures.

14. Moreover, at least one Puerto Rican employee raised concerns about the President/CEO's transgressions, and did not suffer retaliation.

15. At all relevant times until his unlawful termination, Mr. Cina, a Caucasian and natural-born American (not of Puerto Rican or Latino descent), served as Defendants' Controller. He had an outstanding record for 10 years, earned the company hundreds of thousands in generating new revenue, reduced expenses, and strongly contributed to the growth of PRFI's budget from $13 million to over $40 million.

16. On or about June 3, 2010, on information and belief, Dr. Mildred Allen, President of HFCF and Board member of PRFI who is Puerto Rican stated, in word or in substance: "All the Board members and people in key positions with PRFI are Latino. Then why isn't the Controller

3

Latino too. It's frustrating to me and other Board members that Mr. Cina doesn't speak Spanish and we have to translate for him into English all the time."

17. Later in 2010, Plaintiff was unjustly chastised and disciplined for infractions he did not commit, while Latino and Puerto Rican employees were not disciplined for more serious and glaring misconduct.

18. By way of example only, one of the Program Directors failed to properly oversee Medicaid billing, which resulted in a significant loss to the PRFI. However, because he was of Puerto Rican descent he was not disciplined in any manner.

19. Another Program Director, also of Puerto Rican descent operated a program in New Jersey for over six years, with an accumulated loss of over $1.2 million, but because he was Latino, no reprimand or other adverse action befalled him.

20. At all times pertinent hereto, Plaintiff was constantly discriminated against because he was Caucasian and/or a natural-born American and/or not of Puerto Rican or Latino descent.

21. For instance, the President of PRFI, Maria E. Girone ("Girone") excluded him from the company's scheduled Board Meetings, though plaintiff had always presented his fiscal report at each Board and Executive Committee Meeting. This was the only time in his nearly 10-year career with PRFI that Plaintiff was prohibited from attending a Board Meeting.

22. On December 24, 2010, Girone gave Plaintiff a written warning indicating that he would be suspended for two weeks without pay, and placed him on "probation," wrongfully accusing him of violating a company policy, which was not true.

23. Finally, on January 4, 2011, Girone summoned Plaintiff into her office and informed Plaintiff that the company had found "other matters of concern," and swiftly fired him.

24. When Plaintiff asked what "other matters" she was referring to, Girone refused to elaborate and told Plaintiff she had the right to terminate him at will. She then gave Plaintiff 15 minutes to collect his personal belongings and leave the premises.

25. Defendants terminated Plaintiff's employment because of his race and national origin – for being Caucasian and/or a natural-born American and/or not of Puerto Rican or Latino descent, and had a pattern of dismissing non-Latino employees and replacing them with persons of Puerto Rican and/or Latino descent who were not qualified for the positions.

26. At all times pertinent hereto, the discriminatory conduct of Defendants has caused Plaintiff to suffer extraordinary harm, including substantial loss of pay and benefits, including pension, health insurance, and unpaid sick and vacation days, extreme emotional and mental distress, and these and other damages.

27. Defendants' discriminatory and retaliatory actions toward Plaintiff were intentional and especially egregious.

**FIRST COUNT**
*(Title VII Discrimination (Race) - in Violation of 42 U.S.C. § 2000e-2(a)(1))*

28. Plaintiff repeats and realleges each and every allegation set forth above, as if set forth at length herein.

29. Plaintiff, as a member of the Caucasian race, is protected from acts of reverse discrimination.

30. On or about January 4, 2011, Plaintiff was wrongfully discharged by Defendants because of his race.

5

31. Defendants' wrongful discharge of Plaintiff based upon race amounted to unlawful discrimination in violation of 42 U.S.C. § 2000e-2(a)(1).

**WHEREFORE**, plaintiff seeks Judgment against the Defendants as follows:

a. Compensatory damages, including past and future lost wages, salary, and employment benefits

b. Damages for emotional distress;

c. Pre-and post-judgment interest;

d. Reasonable costs, including attorney's fees, expert witness fees and other costs incurred in connection with this litigation;

e. Punitive damages; and

f. Such other and further relief as this Court deems equitable and just under the circumstances.

## SECOND COUNT
*(Title VII Discrimination (National Origin) - in Violation of 42 U.S.C. § 2000e-2(a)(1))*

32. Plaintiff repeats and realleges each and every allegation set forth above, as if set forth at length herein.

33. On or about January 4, 2011, Plaintiff was wrongfully discharged by Defendants because of national origin.

34. Defendants' wrongful discharge of Plaintiff based upon national origin amounted to unlawful discrimination in violation of 42 U.S.C. § 2000e-2(a)(1).

**WHEREFORE**, plaintiff seeks Judgment against the Defendants as follows:

a. Compensatory damages, including past and future lost wages, salary, and employment benefits

b. Damages for emotional distress;

c. Pre-and post-judgment interest;

d. Reasonable costs, including attorney's fees, expert witness fees and other costs incurred in connection with this litigation;

e. Punitive damages; and

f. Such other and further relief as this Court deems equitable and just under the circumstances.

## THIRD COUNT
*(New York Human Rights Law, N.Y. Exec. Law. Art. 15 ("NYHRL")*

35. Plaintiff repeats and realleges each and every allegation set forth above, as if set forth at length herein.

36. On or about January 4, 2011, Plaintiff was wrongfully discharged by Defendants because of national origin.

37. Defendants' wrongful discharge of Plaintiff based upon national origin amounted to unlawful discrimination in violation of Article 15 of the NYHRL.

**WHEREFORE**, plaintiff seeks Judgment against the Defendants as follows:

a. Compensatory damages, including past and future lost wages, salary, and employment benefits;

b. Damages for emotional distress;

c. Pre-and post judgment interest;

d. Reasonable costs, including attorney's fees, expert witness fees and other costs incurred in connection with this litigation;

e. Punitive Damages;;

f. Such other and further relief as this Court deems equitable and just under the circumstances.

## JURY DEMAND

The plaintiff hereby demands a trial by jury for all issues so triable.

                                              **Resnick Law Group, P.C.**
                                              **Attorney for Plaintiff**

Dated: July 13, 2012                      By:      _/s/ Gerald J. Resnick_
                                                                 Gerald J. Resnick, Esq.